In this case, the Internal Revenue Service sold a Certificate of Redemption to Road and Highway Builders, which did not exist. It did not exist because their previous notice of federal tax liens were rendered invalid or nonexistent by the Bankruptcy Court in the District of Nevada. So the issue here in this case is what standard of proof should the Court of Federal Claims have used when considering the issue of whether the IRS had a good faith belief when it sold this, I'll call it a litigation position, under Restatement Section 74? Look, maybe they were a little careless, a little negligent after all. It wasn't they who confused the names, but lack of good faith? Well, Your Honor, it's zeroed in precisely on the appellant's argument here because this is not a case where we have to show bad faith by clear and convincing evidence. I really can't pronounce the word. I think it's your... Refractable. Is that what you're trying to say? Yes, it is, Your Honor. We've given up that word. Thank you. But we're not proving bad faith by clear and convincing evidence. Our position is all we have to show under the Restatement Second of Contracts, Section 74, 1B, is that they didn't have a good faith belief in the existence or viability of this right of redemption. But didn't you get the property? We did get the property, Your Honor. But now that the market's changed and you want to unwind the deal. We'd like $100,000 back that we bought the Brooklyn Bridge with. That's really what's going on here. You know, what happened, I mean, here's the history of the IRS conduct in this case. They advanced, they filed notices of federal tax liens under the wrong name. They filed under Crystal Cascades, Inc., and the property was held by Crystal Cascades Civil, LLC. But didn't Civil, LLC continue to use the same taxpayer number as the entity without the LLC, I mean, without the Civil? The taxpayer did notify anybody that it changed its name, but it may perhaps need a different taxpayer number. I mean, so isn't there some responsibility on the taxpayer here? Well, Your Honor, the taxpayer in this case was Mr. Edward Riggs, the principal behind both of these incarnations. And what he did was he paid his taxes for Civil under the taxpayer ID number for, no. He paid the taxes under Crystal Cascades Civil using a taxpayer ID number issued to Crystal Cascades. My point there is the IRS had actual notice at the end of 2003 and 2004 that Crystal Cascades Civil was in existence and was paying taxes under that number. They had actual notice. So what happened is... But we always assumed the government acted in good faith. Are you attacking that assumption? Yes. On what basis would we... we'd have to change a lot of law to accept your argument there. What would you give us as the reason we should reconsider 50 years of law? Your Honor, the case that speaks most directly and most recently to this point is Ampro Services. Did that really change the law? No, it clarified it to a certain extent, and I'm asking for further clarification. What Ampro says is that when there's an accusation of quasi-criminal or fraudulent conduct on the part of a government agent, then the presumption applies. And it has to be met by clear and convincing evidence. The two parts that it doesn't address are the same parts that Judge Walsky spoke about in Techcom in 2005. He said there's a lesser burden will apply in his view when the government agent is acting according to statutorily or regulatory granted discretion. The bottom tier is an ordinary contract case where the allegation is breach of an implied covenant of good faith and fair dealing or some aspect of lack of good faith. And he said in that case there's no presumption at all. So we have a court of federal claims through Judge Walsky and in a later decision Judge Miller saying that Ampro and this heightened burden of proof doesn't apply to ordinary contract situations. And that's what we had here. There was no allegation by road and highway builders that any of these IRS agents set out with a specific intent to injure it, but they were surely negligent. That's what you need to show lack of good, to show bad faith, don't you? Right, but we're not alleging bad faith here. And that's the issue. Ampro would work if we were alleging that the IRS set out with a specific intent to harm us. But you can't overcome that presumption of good faith with just evidence of negligence, can you? Your Honor, I'm arguing that Ampro doesn't fit these facts. So you're saying there's no presumption of good faith this court should afford to this fact pattern? Yes. What case law supports that? Judge Walsky, Court of Federal Claims, TECOM 2005. There is no federal circuit case that says this. But there is a divergent line of authority in the Court of Federal Claims. There's a split of authority in the Court of Federal Claims. And what happened to us wouldn't have happened to us if we'd have drawn a different judge. And so I'm asking the court to clarify its jurisprudence on this point. And my argument is that this standard that I can't pronounce— You want anticipation on the law rather than to win. I'd like to do both, Your Honor. I think three times he talked about clarifying the law. Let me amend that. Clarify it in our favor. Because that's really what we're asking. We decide cases, of course, but not write essays on the law. Let me refine the point. The presumption should not have been applied in this case. And the presumption shouldn't have been applied because AMPRO says that this heightened standard applies only when there's fraudulent or quasi-criminal behavior, neither of which were present in this case. So from our point of view, we shouldn't have had to meet that burden of proof. And if you take that burden of proof out of our case, given these facts, we win. The only thing the government had going for it in this case, as far as I can see, was this nearly insurmountable burden. I mean, if you look at the IRS conduct here, it's negligent. It's sharp practice. When I mean sharp practice, I mean the IRS agent calling the principal of Road and Highway Builders after deciding that she's not going to use the right of redemption, calling him up and saying, I'll sell you the right of redemption for $100,000. It's in her notes that she was not going to execute on the right of redemption. Now the defendant, IRS, says, but we were in good faith when we challenged the notices of federal tax liens. When we said these were valid liens, we had a good faith belief. If you look at the bankruptcy appellate panel from the Ninth Circuit and its written decision, it says, no, that wasn't a good faith belief. Didn't you have as much an obligation as the buyer to look at the chain of title as the IRS? We did look at the chain of title, Your Honor, and we found it was owned by Crystal Cascade Civil. That's why we were fighting in the bankruptcy court over the validity of the notices of lien. The IRS, by the way, could have also done the same search and found the same name. But Ms. Simpson, the IRS agent, simply pushed the button, and from headquarters comes a notice of federal tax lien in the wrong name. Aren't you arguing here that the government acted in bad faith? Isn't what you're saying, you may have couched it under negligence, but aren't you really asking us to find that the bad faith of government actors is sufficient to turn the law on its head? Well, Your Honor, if the choice is binary, if it's good faith or bad faith, and there's no in between, I guess if that's my choice, then I have to argue bad faith. But if there's a position in between, it's a lack of good faith. We're arguing that they couldn't have had a viable belief in the validity, they couldn't have had a belief that their right of redemption was any good. Because they couldn't have had a belief that their lien was any good. And they couldn't have believed their lien was any good because of the sloppy and negligent way they handled it. That doesn't rise to a specific intent to injure us, but we were injured nevertheless. So what we're asking this court to do, despite all the flowery language about changing the law, we're asking this court to say the presumption does not apply in this kind of case where there's been no accusation of fraud or quasi-criminal conduct. And there is authority that supports this position in the Court of Federal Claims. And here we are with the very issue in this court finally. So what we're saying is, let me back up for a second to the bankruptcy appellate panel of the Ninth Circuit. I want to talk for a moment more about this good faith belief that we had a valid notice of tax lien, which is the foundation to all this. The Ninth Circuit said, when it comes to federal tax liens, they have to be part of a public record that can be searched by ordinary citizens. The IRS was arguing, apparently on a novel basis, that ordinary citizen means professional title searcher. And the Ninth Circuit said, no, it doesn't mean that. And now you're compounding the error by showing up in this court and asking us to change the law. So I don't see any good faith belief in the validity of the federal tax liens, and neither did the Ninth Circuit. And then going back to your lack of good faith, the lack of belief in the viability of the liens, the IRS goes into the trial court in the bankruptcy court in Nevada. They hire an expert to come in and testify for them. Their own expert testifies that an ordinary citizen wouldn't have found this lien like the statute requires. And says, oh, a professional title searcher would have found this lien using the name Crystal Cascades. Their own expert turned on them. So they really have nothing going for them except for this incredible standard of presumption of good faith. And with that, the plaintiff will rest, Your Honor. All right, thank you, Mr. Hebert. Mr. Hockey. May it please the Court. What we have here is a party who entered into a settlement agreement trying to get out of the settlement agreement based upon subsequent developments in the law. But we know the facts here are not really very much in your favor, Mr. Hockey. We've got a clear instance of the government not checking the titles and requiring money it didn't have any right to require. Well, I would respectfully disagree, Your Honor. At the time of the release in question here, both parties were fully aware of the facts and the potential legal insufficiency of the liens. In fact, the plaintiff had already commenced the adversary proceeding before the bankruptcy court, suggesting that their liens had priority over the government's liens precisely because the government had mislabeled the liens. So the facts were known by both sides. The issue had been joined by the government at the adversary proceeding before the bankruptcy court. The government had identified its legal rationale, this existing split in the law, as to whether or not the absence of one of the names in a three-party name, for example, would defeat the tax lien priority. That was the litigation that was ongoing. There were actually two, if you will, piles of money at issue in that. Pile of money number one was the surplus proceeds resulting from the foreclosure sale. Potential pile of money number two was this idea of whether the IRS was going to act upon its rights under statute to redeem the property. The parties entered into a settlement of that issue and entered into the release. The plaintiff offered $100,000 for the IRS to relinquish its right under the redemption. At the time of that relinquishment, time of that release, there had been no determination by the district court or the court of appeals for the Ninth Circuit with respect to the ultimate validity of the liens in question. What you had is a straightforward litigation risk situation in which one party felt that it was worth $100,000 to get the IRS out of the picture with respect to the redemption question. That's a straightforward settlement. It happens all the time. People don't usually have the opportunity to come back after the fact and try to get out of their litigation risk situations. I looked behind me to see if all the lawyers were going to join me because, frankly, what's being suggested here is that based upon subsequent developments in the case, the district law party can escape the agreement, the arms-length transaction, settling its litigation risk that the plaintiff in this case entered into. In fact, had that been the only issue, we wouldn't be here. What's the effect of the Ampro case here? Well, we don't think that the Ampro case changed the nature of the law, which, as indicated by Chief Judge Rader, has been around for some time. In fact, Ampro, although there's language in the case that talks about applying clear air to— You're referring to the venerable Chief Judge? The venerable Chief Judge. Are you calling him old? No. I know my limits, Your Honor. But Ampro didn't change the nature of the law. In fact, Ampro involved what we would, I think, identify as posturing by a contracting officer who suggested to the plaintiff contractor in that case that if they were to challenge the contracting officer's final decision, she might terminate them in some fashion. But nowhere in the decision in Ampro did this court identify that as actually being quasi-criminal or fraudulent behavior. It couldn't be fraudulent because there was nothing deceitful about it. As we indicate, I think it's posturing by the DO. As you know, Mr. Hawking, notwithstanding what you said, we judge a decision and opinion not by who was on it almost 20 years ago or whatever, but what it says. And it says that presumption applies only where a government official allegedly engaged in fraud or some quasi-criminal wrongdoing. That's not the case here, right? Is that just language applying to that case? I would suggest respectfully, Your Honor, that that wasn't the case there either. There was nowhere in Ampro identified by the court that the posturing by the contracting officer amounted to some sort of quasi-criminal conduct. Do you think that's dictum? I think that the case Ampro, limited to its facts, would lead to the conclusion that… You just said it doesn't apply, the facts don't apply to it. I think that… You say it's an overly broad statement. I think that would be fair. I would agree that it would be an overly broad statement. Most things from the bench are fair. And subsequent to Ampro, its advantage was another case involving questions of termination and contacting officers. And again, we don't see anything in its advantage that would necessarily limit the application of the good faith and or clear and convincing evidence requirement for bad faith to… Mr. Hebert, in this case, faces kind of a double whammy, though, doesn't he? Both has to get past this good faith presumption, and then the standard to overcome that presumption is incredibly high as well, isn't it? I'm always a little troubled when the government wants this exceptional standards in their favor in some cases, and in other cases they argue for kind of a congruence that we should be treated just like any other party. Talking in those broad terms, how do you argue this case? Well, I think… Is this an exceptionalism, and is it warranted? I don't think… I think in this case the suggestion that… Let's talk about what really the nature of the activity is. I know the trial court and the argument this morning and somewhat of the brief focus on whether an IRS agent didn't do the dotting of the I's and crossing of the T's when the documents, the lien documents were filed. I would submit that's irrelevant because at the time of the release in the question, her failing in that regard was known to both sides. There's been some suggestion that an individual who had authority to look at whether or not the release would be exercised, but I might add, and the record supports this, she actually is not the authorized representative of the government to effect a release in this case. Rather, it was Ms. Jones who testified before the court, her superior, who actually has the authority under the IRS manual to exercise the release right of the government. But in that case, then, that subordinated individual who was the primary case agent, if you will, notes indicate that, yes, perhaps she didn't think it should be redeemed, but later the notes clearly indicate that she decided, she went out and looked and obtained a bidder for a potential redemption situation and then approached the plaintiff's appellant here and indicated that this was now, she was thinking about actually redeeming and were they interested in getting out of it. In all of that, there's nothing wrong. It's all following procedure. The IRS has a duty to collect revenue against lost taxes. In this case, they had a $700,000 lost payroll taxes. Is this almost a case of comparative negligence? I wouldn't even think it's that, Your Honor. I think at the time of the release, certainly at the time of the release, both parties were fully apprised of the facts and the law. So what we have is, as I indicated at the outset, this is a settlement of an existing dispute, ongoing litigation. And it was worth, at that time, to road highway builders to pay $100,000 to get the IRS out of the redemption business vis-a-vis this property. Road highway builders indicated that they had put some improvements on it. They didn't want to take the risk that the bankruptcy court might come down on the favor of the government in this case and allow the government to come in and take that property back through the redemption statute. So it was eminently reasonable, we would think, from their perspective to offer $100,000 to get rid of the IRS on the redemption question, given that they had just paid $1.3 million in the foreclosure sale for the property. But you knew at that time that the lien had been filed against the wrong party. Yes, both parties did. Well, let me ask a separate question. If we don't apply the presumption of good faith, how does the government prevail? The government prevails because there's no evidence in this record at all, frankly, to suggest that the government's agents at the time of the release, and these agents now, are the U.S. Attorney's Office, who are defending the case before the bankruptcy court, who later subsequently got authorization to go to the Court of Appeals for the Ninth Circuit. And as the court is familiar, that's not an easy burden for the government to meet with respect to obtaining permission to take an appeal. So the suggestion is the real focus of who's got the bad faith here or the lack of good faith would seem to me not to be on these folks who are involved in the early stages of the process because the mistakes that they made had already been discovered at the time of the agreement in this case. What seems to have been really the suggestion is that the government didn't have any business defending the case before the bankruptcy court. But there's absolutely no evidence in this record at all with respect to that issue. And so, therefore, if the court decides that there is no burden of good faith to be applied but rather some sort of presumption of evidence, I think on this evidence the court would have to affirm. And, of course, just as the court knows, TECOM is non-binding precedent. As this court recently remarked in Scott Timber, the issue in TECOM had to do with the good faith and fair dealing clause, which is distinct from the presumption of good faith. So even the TECOM court itself recognized that the issue that was presented before it did not involve the issue that's presented here today, which is a pre-contract action, and as this court commented in Scott Timber, good faith and fair dealing has no place in pre-contract activity. Finally, we would submit that we think the reasoning is erroneous in TECOM. Are there any questions? Thank you, Mr. Hockey. Mr. Abare? Your Honor, going in reverse order, my esteemed colleague said that TECOM talked about a different kind of situation, implied kind of good faith and fair dealing. I didn't know there was more than one kind of good faith in the jurisprudence of this court. I mean, what we've got here is this. The record will show that the IRS called Mr. Bunting, principal of Road and Highway Builders, and said, we'll sell you our right of redemption for $100,000. And he said to them, her, Karen Rip, he said, but we're fighting about that issue in the bankruptcy court. Can you do that? And she said, we're the service. We can do that. So he said, I thought I had to do it. So I gave her $100,000. But that's the point that's most difficult for you, isn't it? Isn't this just a settlement at that point, as Mr. Hockey says? There was a certain litigation risk down the road, and you said, you know, I'm going to hedge my bets. I might not win this case down the road. Why don't I put $100,000 on the table right now and make sure I'm secure? Assuming that fact, Your Honor. Assuming that fact. Isn't that the way this happened? Well, Mr. Bunting testified with a little bit different slant. He thought this was something he had to do because the IRS called him up and said, we'll give it to you for $100,000, or we're going to exercise it and wipe you out, is what she said. But when she said, we're going to exercise it and wipe you out, take the property back, she had no intention of doing it because it said so right there in her notes. But even if you assume this was a risk allocation on the part of road and highway builders, the law says in the restatement section of contracts, which was cited by this court in Aviation Executive 1991, it says the forbearing or surrendering party, the IRS, has to believe that the claim or defense may be fairly determined to be valid. And there's nothing here by which they could say that we could fairly determine that this was a good lien upon which to base our right of redemption. But isn't this a technicality? Sure, the name of the company had changed, but it wasn't that it had been sold to a real third party. This is a technical defect, right, about which your client knew. My client did his homework and found that the property was owned by Crystal Cascades Civil. The IRS didn't and thought it was owned by Crystal Cascades. But it goes all the way to the Ninth Circuit, which tends to suggest that this is a closely contested issue. Just because it makes it to an appellate court doesn't mean it was valid, Your Honor. I don't think. And by the way, there is some very limited authority out there because there just isn't much, but it was cited in our brief. The Supreme Court of Iowa and Dyer said that evidence of loss in a later proceeding is evidence that there was no good faith. There was no lack of good faith belief in the validity. And thank you, Your Honor. Thank you, Mr. A. Our last case this morning will be Burton v. Shinseki.